

1   ROBBINS GELLER RUDMAN
      & DOWD LLP
2   DARREN J. ROBBINS (168593)
    DAVID C. WALTON (167268)
3   655 West Broadway, Suite 1900
    San Diego, CA 92101
4   Telephone: 619/231-1058
    619/231-7423 (fax)
5   darrenr@rgrdlaw.com
    davew@rgrdlaw.com
6         – and –
    DAVID J. GEORGE
7   ROBERT J. ROBBINS
    120 E. Palmetto Park Road, Suite 500
8   Boca Raton, FL 33432
    Telephone: 561/750-3000
9   561/750-3364 (fax)
    dgeorge@rgrdlaw.com
10  rrobbins@rgrdlaw.com

11  Attorneys for Plaintiff

12  [Additional counsel appear on signature page.]

13              UNITED STATES DISTRICT COURT

14             CENTRAL DISTRICT OF CALIFORNIA

15                   WESTERN DIVISION

16  WASHTENAW COUNTY            )  VIA FAX
    EMPLOYEES' RETIREMENT       )
17  SYSTEM, Individually and on Behalf of )  CV11  04714  PA (MANx)
    All Others Similarly Situated, )
18                              )  CLASS ACTION
                Plaintiff,       )
19                              )  COMPLAINT FOR VIOLATIONS OF
        vs.                     )  THE FEDERAL SECURITIES LAWS
20                              )
    LONGTOP FINANCIAL           )
21  TECHNOLOGIES LIMITED, WAI   )
    CHAU LIN and DEREK          )
22  PALASCHUK,                  )
                                )
23              Defendants.      )  DEMAND FOR JURY TRIAL
                                )
24

25

26

27

28

**JURISDICTION AND VENUE**

1.      Jurisdiction is conferred by §27 of the Securities Exchange Act of 1934 ("1934 Act").  The claims asserted herein arise under §§10(b) and 20(a) of the 1934 Act, 15 U.S.C. §§78j(b) and 78t(a), and SEC Rule 10b-5, 17 C.F.R. §240.10b-5.

2.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §27 of the 1934 Act.  Longtop Financial Technologies Limited ("Longtop" or the "Company") American Depositary Shares ("ADSs") and ordinary shares were actively traded on the New York Stock Exchange ("NYSE") in the United States throughout the Class Period.

3.      Venue is proper in this District pursuant to §27 of the 1934 Act and 28 U.S.C. §1391(b).  The violations of law complained of herein occurred in part in this District, including the dissemination of materially false and misleading statements complained of herein into this District.  Longtop's headquarters are located in Beijing, China.

4.      In connection with the acts alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.  Longtop's shares trade in an efficient market on the NYSE.

**INTRODUCTION**

5.      This is a securities class action on behalf of all persons who purchased or otherwise acquired the publicly traded securities of Longtop between May 15, 2009 and May 17, 2011 (the "Class Period"), against Longtop and certain of its officers and/or directors for violations of the 1934 Act.  These claims are asserted against Longtop and certain of its officers and/or directors who made materially false and misleading statements during the Class Period in press releases, analyst conference calls, and filings with the Securities and Exchange Commission ("SEC").

6.     Longtop, together with its subsidiaries, provides a wide range of software solutions and services to financial institutions in the People's Republic of China, including the development, licensing and support of software solutions, the provision of maintenance, support, and other services, and system integration services related to the procurement and sale of third party hardware and software.   The software solutions provided by the Company are classified into four categories: channel, business, management, and business intelligence.

7.     During the Class Period, defendants issued materially false and misleading statements regarding the Company's financials and business prospects. Specifically, the Company misrepresented and overstated its financial condition.  As a result of defendants' false statements, Longtop securities traded at artificially inflated prices during the Class Period, reaching a high of $42.73 per share on November 10, 2010.

8.     On April 26, 2011, Citron Research ("Citron") issued a report on Longtop stating "every financial statement from its IPO to this date is fraudulent." The report raised serious issues with the quality of the Company's earnings reports and operations, pointing to a suspicious off-balance-sheet arrangement with Xiamen Longtop Human Resources ("XLHR"), a staffing company, that allowed Longtop to report super-sized profit margins and inflated financial results.  The report also called into question the integrity of Longtop's key management, specifically pointing to undisclosed misdeeds involving past unfair business practices.

9.     In response to negative news revealed in the report, the price of Longtop shares declined substantially, falling 12.9%, or $3.30 per share on April 26, 2011, and then plummeted another 20%, or $4.51 per share, to close at $17.73 per share on April 27, 2011, on heavy trading volume.

10.     Following publication of the Citron report, Longtop hosted a conference call during which it vehemently denied every aspect of the report and assured investors that not only was Citron wrong, but that the Company would soon be issuing

1  positive financial results that would receive a clean bill of health from Longtop's
2  auditors.  The effect of the false and misleading statements made in the conference
3  call was to maintain and increase the artificial inflation in the price of Longtop
4  securities.

5     11. Then on May 9, 2011, Citron published a follow-up report entitled
6  "Longtop Financial (NYSE: LFT) Final Proof of Undisclosed Related Party
7  Transactions."  Among other things, the report further revealed the Company's
8  connection to XLHR and how that connection materially impacted Longtop's
9  financial condition.

10     12. In response to the release of the second Citron report, the price of
11  Longtop stock fell 8.2%, or $1.67 per share to close at $18.54 per share on May 9,
12  2011.

13     13. On May 10, 2011, Longtop issued a press release further denying the
14  claims of both Citron reports, as well as a similar report issued by OLP Global.

15     14. On May 17, 2011, trading in Longtop stock was halted pending an
16  announcement by the Company.  At the time trading was suspended, Longtop stock
17  was trading at $18.93 per share.

18     15. On May 19, 2011, Longtop issued a press release announcing that the
19  Company would not announce its fourth quarter and fiscal year 2011 financial results
20  on May 23, 2011, as previously scheduled (and emphatically reiterated by defendants
21  in their false denials of the Citron reports).  The Company stated that it "plans to
22  publish an announcement on the new date of fourth quarter and fiscal year 2011
23  earnings reporting once the date has been determined."

24     16. Then, on May 23, 2011, Longtop issued a press release announcing that
25  its independent auditor, Deloitte Touche Tohmatsu CPA Limited, had resigned and
26  that the SEC was conducting an investigation into related matters.  The Company also
27  announced that its Chief Financial Officer ("CFO") Derek Palaschuk  ("Palaschuk")
28  tendered his resignation dated May 19, 2011.  But for the suspension of trading, the

1   disclosures on May 19 and May 23, 2011 would have substantially lowered the price
2   of Longtop securities and further removed the artificial inflation caused by
3   defendants' fraud.

4        17.   The true facts, which were known by defendants but concealed from the
5   investing public during the Class Period, were as follows:

6             (a)   the Company misrepresented and overstated its financial condition
7   and future business prospects; and

8             (b)   as a result of the foregoing, defendants' statements regarding the
9   Company's financial performance and expected earnings were false and misleading
10  and lacked a reasonable basis when made.

11       18.   As a result of defendants' false statements, Longtop's securities traded at
12  inflated levels during the Class Period.  After the above revelations seeped into the
13  market, the Company's shares were hammered by massive sales, sending them down
14  *55.7%* from their Class Period high.

15                                **PARTIES**

16       19.   Plaintiff Washtenaw County Employees' Retirement System("Plaintiff")
17  purchased Longtop shares as described in the attached certification and was damaged
18  thereby.

19       20.   As stated above, defendant Longtop together with its subsidiaries
20  provides a wide range of software solutions and services to financial institutions in
21  China.  Longtop's headquarters are located in Beijing, China.

22       21.   Defendant Wai Chau Lin, also known as Weizhou Lian ("Lian"), is one
23  of the Company's founders and, at all relevant times was a director and Chief
24  Executive Officer ("CEO") of Longtop.

25       22.   Defendant Palaschuk was, at all relevant times, CFO of Longtop.

26       23.   Defendants Lian and Palaschuk (the "Individual Defendants"), because of
27  their positions with the Company, possessed the power and authority to control the
28  contents of Longtop's quarterly reports, press releases and presentations to securities

                                   - 4 -

1    analysts, money and portfolio managers and institutional investors, *i.e.*, the market.

2    They were provided with copies of the Company's reports and press releases alleged

3    herein to be misleading prior to or shortly after their issuance and had the ability and

4    opportunity to prevent their issuance or cause them to be corrected.  Because of their

5    positions with the Company, and their access to material non-public information

6    available to them but not to the public, the Individual Defendants knew that the

7    adverse facts specified herein had not been disclosed to and were being concealed

8    from the public and that the positive representations being made were then materially

9    false and misleading.  The Individual Defendants are liable for the false statements

10   pleaded herein.

11                   **FRAUDULENT SCHEME AND COURSE OF BUSINESS**

12          24.    Defendants are liable for: (i) making false statements; or (ii) failing to

13   disclose adverse facts known to them about Longtop.  Defendants' fraudulent scheme

14   and course of business that operated as a fraud or deceit on purchasers of Longtop

15   publicly traded securities was a success, as it: (i) deceived the investing public

16   regarding Longtop's prospects and business; (ii) artificially inflated the prices of

17   Longtop publicly traded securities; and (iii) caused Plaintiff and other members of the

18   Class to purchase Longtop publicly traded securities at inflated prices and suffer

19   economic loss when the revelations set forth herein reached the market.

20                          **CLASS ACTION ALLEGATIONS**

21          25.    Plaintiff brings this action as a class action pursuant to Rule 23 of the

22   Federal Rules of Civil Procedure on behalf of all persons who purchased or otherwise

23   acquired Longtop publicly traded securities during the Class Period (the "Class").

24   Excluded from the Class are defendants and their families, the officers and directors of

25   the Company, at all relevant times, members of their immediate families and their

26   legal representatives, heirs, successors, or assigns and any entity in which defendants

27   have or had a controlling interest.

28

1    26.    The members of the Class are so numerous that joinder of all members is

2  impracticable.  The disposition of their claims in a class action will provide substantial

3  benefits to the parties and the Court.  Longtop has over 57 million shares outstanding,

4  owned by hundreds if not thousands of persons.

5    27.    There is a well-defined community of interest in the questions of law and

6  fact involved in this case.  Questions of law and fact common to the members of the

7  Class predominate over questions that may affect individual Class members, and

8  include:

9         (a)    whether the 1934 Act was violated by defendants;

10        (b)    whether defendants omitted and/or misrepresented material facts;

11        (c)    whether defendants' statements omitted material facts necessary to

12  make the statements made, in light of the circumstances under which they were made,

13  not misleading;

14        (d)    whether defendants knew or deliberately disregarded that their

15  statements were false and misleading;

16        (e)    whether the prices of Longtop securities were artificially inflated;

17  and

18        (f)    the extent of damage sustained by Class members and the

19  appropriate measure of damages.

20    28.    Plaintiff's claims are typical of those of the Class because Plaintiff and

21  the Class sustained damages from defendants' wrongful conduct.

22    29.    Plaintiff will adequately protect the interests of the Class and has retained

23  counsel who are experienced in class action securities litigation.  Plaintiff has no

24  interests which conflict with those of the Class.

25    30.    A class action is superior to other available methods for the fair and

26  efficient adjudication of this controversy.

27

28

## BACKGROUND

1       31.    Longtop describes itself as the "leading software development and solutions provider targeting the financial services industry in China." The Company develops and delivers a comprehensive range of software applications and solutions with a focus on meeting the rapidly growing IT needs of financial services institutions in China.

      32.    On October 25, 2007, Longtop completed its listing on the NYSE of ADSs representing ordinary shares offered in the Company's initial public offering, which closed on October 29, 2007. Then, on November 23, 2009, the Company completed a follow-on public offering of ADSs representing ordinary shares. Longtop received aggregate net proceeds from the follow-on offering of approximately $126.6 million, after deducting underwriting discounts and commissions, but before deducting offering expenses paid by the Company.

### DEFENDANTS' FALSE AND MISLEADING STATEMENTS ISSUED DURING THE CLASS PERIOD

      33.    The Class Period starts on May 15, 2009. On that date, the Company filed a Form 6-K with the SEC that provided an update of certain developments since the filing of the Company's 2008 Form 20-F, and included financial results for the nine months ended December 31, 2008, and a purported update of the Company's risk factors. The Company reported a gross profit of more than $54 million, compared to $29.6 million for the same period in 2007, an increase in income from operations to $36 million, compared to $569,000 for the same period in 2007, and an increase in net income to $34.6 million compared to a net loss of $1.679 million for the same period in 2007. The Form 6-K, which was signed by Palaschuk, also stated, in part:

> *Total Revenues.* Total revenues for the 2008 Period were $80.4 million, an increase of 61.6% from $49.8 million in the 2007 Period . . . .

*    *    *

1    ***Net Income.*** As a result of the foregoing, we had net income of

2    $34.6 million in the 2008 Period as compared to a loss of $1.7 million in

3    the 2007 Period.

4    34.   On May 27, 2009, the Company issued a press release announcing its

5    financial results for the fourth quarter and fiscal year ended March 31, 2009.  The

6    press release discussed the Company's fourth quarter and fiscal year 2009 financial

7    results and business outlook, and stated, in part:

8    • Fourth Quarter Total Revenues of US$25.9 million, an Increase of

9    60.3% Year-on-Year;

10   • Fourth Quarter Adjusted Net Income of US$11.0 million, an

11   Increase of 76.6% Year-on-Year;

12   • Full Year Total Revenues of US$106.3 million, Up 61.3% Year-

13   on-Year; Adjusted Net Income of US$51.6 million, an Increase of

14   52.8% Year-on-Year; Operating Cash Flow of US$41.8 million

15                   *        *        *

16   "I am very pleased to report that we have concluded fiscal 2009 with

17   another quarter of solid results.  We look back at a great year in which

18   we enjoyed significant business expansion despite a challenging

19   economic environment and capitalized on the market opportunity for IT

20   development in China's financial services sector to extend our software

21   and solutions and further diversify our customer base," commented

22   Weizhou Lian, CEO of Longtop.  "We are off to a promising start in

23   fiscal 2010 with our agreement to acquire Sysnet which will make

24   Longtop the second largest IT service provider in China's insurance

25   industry by market share.  Our outlook for 2010 is positive based on our

26   sound business fundamentals and ongoing strong demand from our

27   customers."

28                   *        *        *

Commenting on the results, Derek Palaschuk, CFO of Longtop said: "In the fourth quarter and fiscal 2009 Longtop reported revenue and Adjusted Net Income results which substantially exceeded the guidance we gave at the beginning of the fiscal year.  Our strong results underscore the sales momentum, recurring revenue structure and operating leverage of our Company's business model, as well as our solid execution.  Looking ahead, the attractive market opportunity calls for continuing our strategy of investing back into the business and grasping consolidation opportunities through acquisitions that will help make Longtop the leading IT service provider in China's financial services industry."

**BUSINESS OUTLOOK**

Longtop anticipates for the quarter ending June 30, 2009, excluding Sysnet:

i) Total revenues of US$27.0 million, representing an increase of 39.9% YoY from revenues of US$19.3 million in the corresponding year ago period.  Software development revenues are expected to be US$23.0 million, a YoY increase of 42.9% from US$16.1 million in the corresponding year ago period;

ii) Adjusted Operating Income of US$11.0 million, representing an increase of 20.9% YoY from Adjusted Operating Income of US$9.1 million in the corresponding year ago period.

iii) Adjusted Net Income of US$10.0 million or US$0.20 per diluted share, representing an increase of 28.2% YoY from Adjusted Net Income of US$7.8 million in the corresponding year ago period.

Longtop anticipates for its fiscal year ending March 31, 2010, including Sysnet:

i) Total revenues of US$142.0 million, representing an increase of 33.6% YoY from revenues of US$106.3 million in fiscal 2009. Software development revenues are expected to be US$122.0 million, a YoY increase of 36.2% from US$89.6 million in fiscal 2009;

ii) Adjusted Operating Income of US$67.0 million, an increase of 27.6% YoY from Adjusted Operating Income of US$52.5 million in fiscal 2009.

iii) Adjusted Net Income of US$63.0 million or US$1.20 per diluted share, an increase of 22.1% YoY from Adjusted Net Income of US$51.6 million in fiscal 2009.

35.   Following issuance of the earnings release, on May 27, 2009, after the market closed, Longtop hosted a conference call to discuss the Company's financial results and operations.   During the call, defendants made numerous positive statements about the Company's business and operations.

36.   On June 29, 2009, the Company filed with the SEC its annual report for the fiscal year ended March 31, 2009. The financial results reported in the Form 20-F were substantially similar to those reported in the Company's prior press releases. The Form 20-F was signed by defendants Lian and Palaschuk and contained certifications signed by Lian and Palaschuk stating the Form 20-F did not include any material misrepresentations.

37.   On August 19, 2009, the Company issued a press release announcing its financial results for the first quarter of 2010.   The press release discussed the Company's first quarter 2010 financial results and business outlook, and stated, in part:

- Total Revenues of US$28.5 million, an Increase of 47.4% Year-on-Year;
- Adjusted Operating Income of US$11.6 million, an Increase of 27.7% Year-on-Year;

- Adjusted Net Income of US$10.7 million, an Increase of 36.6% Year-on-Year;
- Full year Revenue Guidance Increased to US$145.0 million and Adjusted EPS Guidance Increased to US$1.22 Per Share

\*     \*     \*

"We are off to a strong start with the results of our first fiscal quarter demonstrating healthy demand from Longtop's customers, which has allowed us to increase our full year guidance. We are seeing strong demand across all customer and product segments and we see this trend continuing. Longtop is especially pleased to be recently ranked as the #1 market share leader by IDC for banking solutions and # 2 in the insurance IT solution market in China for calendar year 2008. As we did in calendar 2008, we are working hard to continue to expand our market share and market leadership in China's rapidly growing financial IT solution market," commented Weizhou Lian, CEO of Longtop.

\*     \*     \*

Commenting on the results, Derek Palaschuk, CFO of Longtop, said, "We have executed to deliver outstanding top and bottom line financial results during the first fiscal quarter in what is traditionally our lowest revenue and net income quarter in the fiscal year. On the back of a strong backlog and pipeline in our core software development business, we are able to increase our full year revenue and net income guidance even though our non-core Other Services business, which accounts for less than fifteen percent of revenues, is facing some headwinds. Consistent with previous years, in Q2 and Q3 2010 we expect significant improvements from this quarter in our margins and cash flow from operations."

**BUSINESS OUTLOOK**

Longtop anticipates for the quarter ending September 30, 2009:

i) Total revenues of US$37.5 million, representing an increase of 33.0% YoY from revenues of US$28.2 million in the corresponding year ago period. Software development revenues are expected to be US$34.0 million, a YoY increase of 44.1% from US$23.6 million in the corresponding year ago period;

ii) Adjusted Operating Income of US$18.5 million, representing an increase of 18.6% YoY from Adjusted Operating Income of US$15.6 million in the corresponding year ago period.

iii) On the assumption a $3.0 million income tax refund for being designated as a "Key Software Company" will be received in Q2 2010, Adjusted Net Income of US$19.5 million or US$0.37 per diluted share, representing an increase of 20.4% YoY from Adjusted Net Income of US$16.2 million in the corresponding year ago period. If the income tax refund is received in Q3 2010, Adjusted Net Income is expected to be $16.5 million or US$0.31 per diluted share.

Longtop anticipates for its fiscal year ending March 31, 2010:

i) Total revenues of US$145.0 million, representing an increase of 36.4% YoY from revenues of US$106.3 million in fiscal 2009. Software development revenues are expected to be US$127.0 million, a YoY increase of 41.7% from US$89.6 million in fiscal 2009;

ii) Adjusted Operating Income of US$69.0 million, an increase of 31.4% YoY from Adjusted Operating Income of US$52.5 million in fiscal 2009.

iii) Adjusted Net Income of US$65.0 million or US$1.22 per diluted share, an increase of 26.0% YoY from Adjusted Net Income of US$51.6 million in fiscal 2009.

38.     Following issuance of the earnings release, Longtop hosted a conference call to discuss the Company's financial results and operations.   During the call, defendants made numerous positive statements about the Company's business and operations.

39.     On November 16, 2009, the Company issued a press release announcing its financial results for the second quarter of 2010.   The press release discussed the Company's second quarter 2010 financial results and business outlook, and stated, in part:

- Second Quarter Total Revenues of US$42.8 million, Up 52.0% Year-on-Year;
- Second Quarter Adjusted Operating Income of US$20.8 million, an Increase of 33.4% Year-on-Year;
- Second Quarter Adjusted Net Income of US$21.4 million, an Increase of 32.0% Year-on-Year;
- Second Quarter Adjusted Diluted Earnings Per Share of US$0.40, an Increase of 29.0% Year-on-Year;
- Full Year 2010 Revenue Guidance Increased to US$158.0 million from Previous Guidance of US$145.0 million and Adjusted Diluted Earnings Per Share Guidance Increased to US$1.29 Per Share from Previous Guidance of US$1.22 Per Share

                        *        *        *

"I'm pleased to report that on the back of solid execution once again our second quarter financial results exceeded our top and bottom line guidance," commented Weizhou Lian, CEO of Longtop. "This quarter we achieved a number of important operational milestones including winning our first meaningful contract in the securities industry and a Big Four Bank awarding us a BI consulting project over our global competitors.   We also continue to strengthen our management and strive

for efficiency and better execution to manage our growth.  I continue to be optimistic about our prospects, as Longtop's competitive position is stronger than it has ever been and we have good visibility for continued strong demand."

\*      \*      \*

Commenting on the results, Derek Palaschuk, CFO of Longtop, said: "The outstanding results from the fiscal second quarter further solidified Longtop's financial strength.  The second quarter's record revenues were supported by robust cash flow from operations, which was US$18.8 million.   And looking ahead, with strong demand and US$46.5 million in software development revenue backlog excluding Sysnet, we have increased our estimate for fiscal 2010 revenues from US$145.0 million to US$158.0 million and for Adjusted Net Income of US$70.5 million as compared to our previous guidance of US$65.0 million."

**BUSINESS OUTLOOK**

Longtop anticipates for the quarter ending December 31, 2009:

i) Total revenues of US$48.5 million, representing an increase of 47.4% YoY from revenues of US$32.9 million in the corresponding year ago period. Software development revenues are expected to be US$42.7 million, a YoY increase of 47.8% from US$28.9 million in the corresponding year ago period;

ii) Adjusted Operating Income of US$26.0 million, representing an increase of 50.3% YoY from Adjusted Operating Income of US$17.3 million in the corresponding year ago period.

iii) Adjusted Net Income of US$23.5 million or US$0.43 per diluted share (based on an increased share count of approximately 55.3 million shares which assumes 4.0 million new shares issued in Q3 2010),

representing an increase of 42.4% YoY from Adjusted Net Income of US$16.5 million in the corresponding year ago period.

Longtop anticipates for its fiscal year ending March 31, 2010:

i) Total revenues of US$158.0 million, representing an increase of 48.6% YoY from revenues of US$106.3 million in fiscal 2009. Software development revenues are expected to be US$137.0 million, a YoY increase of 52.9% from US$89.6 million in fiscal 2009;

ii) Adjusted Operating Income of US$74.5 million, an increase of 41.9% YoY from Adjusted Operating Income of US$52.5 million in fiscal 2009.

iii) Adjusted Net Income of US$70.5 million or US$1.29 per diluted share (based on an increased share count of approximately 54.8 million shares which assumes 4.0 million new shares issued in Q3 2010), an increase of 36.6% YoY from Adjusted Net Income of US$51.6 million in fiscal 2009.

40.    Following issuance of the earnings release, on November 16, 2009, after the market closed, Longtop hosted a conference call to discuss the Company's financial results and operations.  During the call, defendants made numerous positive statements about the Company's business and operations.

41.    On November 18, 2009, the Company issued a press release announcing its follow-on public offering of 3,700,000 ADSs.  The press release stated:

Longtop Financial Technologies Limited (NYSE: LFT) ("Longtop" or the "Company"), a leading software developer and solutions provider targeting the financial services industry in China, announced today that its follow-on public offering of 3,700,000 American depositary shares, or ADSs, each representing one ordinary share of the Company, was priced at $31.25 per ADS.  Longtop has granted the underwriters a 30-day option to purchase up to an additional 555,000 ADSs.

1      Longtop plans to use the net proceeds of the offering for potential

2      acquisitions and for general corporate purposes.  The Company's

3      management will retain broad discretion over the use of proceeds, and

4      the Company may ultimately use the net proceeds for different purposes.

5      Deutsche Bank Securities Inc. and Morgan Stanley & Co. International

6      plc acted as joint bookrunners for the offering.

7          42.    On November 23, 2009, the Company issued a press release announcing

8  the closing of its follow-on public offering of 4,255,000 ADSs.  The press release

9  stated in part:

10      Longtop Financial Technologies Limited (NYSE: LFT) ("Longtop" or

11      the "Company"), a leading software developer and solutions provider

12      targeting the financial services industry in China, announced the closing

13      today of its follow-on public offering of 4,255,000 American depositary

14      shares, or ADSs, representing 4,255,000 ordinary shares of the

15      Company.  The offering included a total of 555,000 ADSs sold by the

16      Company pursuant to the underwriters' over-allotment option, which

17      was exercised in full.  The Company received aggregate net proceeds of

18      approximately $127 million, after deducting underwriting discounts and

19      commissions, but before deducting offering expenses payable by the

20      Company.

21      Deutsche Bank Securities Inc. and Morgan Stanley & Co. International

22      plc acted as joint bookrunners for the offering.

23      This press release does not constitute an offer to sell, and it is not

24      soliciting an offer to buy, securities and does not constitute an offer,

25      solicitation or sale in any jurisdiction where the offer or sale is not

26      permitted.

27

28

43.     On February 10, 2010, the Company issued a press release announcing its financial results for third quarter of 2010.  The press release discussed the Company's third quarter 2010 financial results and business outlook, and stated, in part:

**FINANCIAL HIGHLIGHTS**

- Third quarter total revenues of US$54.7 million, an increase of 66.2% Year-on-Year;

- Third quarter Adjusted Operating Income of US$29.3 million, an increase of 69.3% Year-on-Year;

- Third quarter Adjusted Net Income of US$29.3 million, which includes an income tax benefit of US$4.0 million. Excluding the income tax benefit of US$4.0 million Adjusted Net Income would have increased 53.1% Year-on-Year;

- Third quarter Adjusted Diluted Earnings Per Share of US$0.53, which includes an income tax benefit of US$0.07 per share. Excluding the income tax benefit of US$0.07 Per Share, Adjusted Diluted Earnings Per Share would have been US$0.46, an increase of 43.8% Year-on-Year;

- Cash flow from operations was US$39.2 million for the third quarter and US$50.1 million for the first nine months;

- Excluding Giantstone, full year 2010 revenue guidance increased to US$166.0 million from previous guidance of US$158.0 million, and Adjusted Diluted Earnings Per Share guidance increased from previous guidance of US$1.29 per share to US$1.39 per share, which includes US$0.07 per share from an income tax benefit recorded in Q3 2010.

"I'm pleased to report that on the back of solid execution from our management and employees, once again our third quarter financial results exceeded our top and bottom line guidance.  We see ongoing

strong demand from our customers that execute on their long-term IT development plans irrespective of short-term changes in macroeconomic factors.   Based on our sales pipeline and ongoing discussions with customers about their IT spending plans, Longtop's growth prospects remain strong for fiscal 2011. I believe Longtop's competitive position is strengthening and we are taking market share from our competitors," commented Weizhou Lian, CEO of Longtop.   "Furthermore, this quarter's results underscore the successful integration of Sysnet with insurance being our fastest growing customer segment.  I believe the recent acquisition of Giantstone, a leading core banking solution provider in China will offer us new growth opportunities."

                                     *        *        *

Commenting on the results, Derek Palaschuk, CFO of Longtop, said: "In the third quarter revenue and Adjusted Net Income once more substantially exceeded guidance.  A robust third quarter cash flow from operations of US$39.2 million and US$50.1 million for the first nine months together with the proceeds from the November 2009 secondary offering will allow us to continue to invest intelligently in our existing operations and grasp further consolidation opportunities through acquisitions that will help extend our leading position in China's financial technology industry."

**BUSINESS OUTLOOK**

Longtop anticipates for the quarter and ending March 31, 2010, excluding Giantstone:

i) Total revenues of US$40.0 million, representing an increase of 54.4% YoY from revenues of US$25.9 million in the corresponding year ago period.   Software development revenues are expected to be US$34.0

million, a YoY increase of 61.1% from US$21.1 million in the corresponding year ago period.

ii) Adjusted Operating Income of US$16.0 million, representing an increase of 50.9% YoY from Adjusted Operating Income of US$10.6 million in the corresponding year ago period.

iii) Adjusted Net Income of US$15.5 million, representing an increase of 40.9% YoY from Adjusted Net Income of US$11.0 million in the corresponding year ago period.

iv) Adjusted Diluted Earnings Per Share of US$0.26, representing an increase of 23.8% YoY from Adjusted Diluted Earnings Per Share of US$0.21 in the corresponding year ago period.

Longtop anticipates for its fiscal year ending March 31, 2010, excluding Giantstone:

i) Total revenues of US$166.0 million, representing an increase of 56.2% YoY from revenues of US$106.3 million in fiscal 2009. Software development revenues are expected to be US$142.0 million, a YoY increase of 58.5% from US$89.6 million in fiscal 2009;

ii) Adjusted Operating Income of US$77.5 million, an increase of 47.6% YoY from Adjusted Operating Income of US$52.5 million in fiscal 2009.

iii) Adjusted Net Income of US$77.0 million, an increase of 49.2% YoY from Adjusted Net Income of US$51.6 million in fiscal 2009. Excluding the Q3 2010 Income Tax Benefit of US$4.0 million, Adjusted Net Income would have increased 41.5% YoY;

iv) Adjusted Diluted Earnings Per Share of US$1.39, an increase of 41.8% from Adjusted Diluted Earnings Per Share of US$0.98 in fiscal 2009. Excluding the Q3 2010 Income Tax Benefit of US$0.07 per fully

diluted share, Adjusted Diluted Earnings per Share would have increased 34.7% YoY.

44.     Following issuance of the earnings release, on February 10, 2010, after the market closed, Longtop hosted a conference call to discuss the Company's financial results and operations.  During the call, defendants made numerous positive statements about the Company's business and operations.

45.     On May 24, 2010, the Company issued a press release announcing its financial results for the fiscal fourth quarter and fiscal year ended March 31, 2010. The press release discussed the Company's fourth quarter and fiscal year 2010 financial results and business outlook, and stated, in part:

**FINANCIAL HIGHLIGHTS**

- Fourth quarter total revenues of US$43.1 million, an increase of 66.4% Year-on-Year;
- Fourth quarter Adjusted Operating Income of US$17.5 million, an increase of 65.2% Year-on-Year;
- Fourth quarter Adjusted Net Income of US$16.3 million, an increase of 48.2% Year-on-Year;
- Fourth quarter Adjusted Diluted Earnings Per Share of US$0.28, an increase of 33.3% Year-on-Year;
- Fourth quarter US GAAP net income per diluted share of US$0.10, a decrease of 41.2% Year-on-Year;
- Full year total revenues of US$169.1 million, up 59.0% Year-on-Year;
- Full year Adjusted Operating Income of US$ 79.1 million, up 50.6% Year-on-Year;
- Full year Adjusted Net Income of US$77.7 million, which includes an income tax benefit of US$3.8 million. Excluding the tax benefit, Adjusted Net Income would have increased 43.2%;

- Full year Adjusted Diluted Earnings Per Share of US$1.41, which includes an income tax benefit of US$0.07 per share. Excluding the tax benefit, Adjusted Diluted Earnings Per Share would have increased 36.7%;

- Full year US GAAP net income per diluted share of US$1.07, an increase of 28.9% Year-on-Year;

- Cash flow from operations was US$13.2 million for the fourth quarter and US$62.9 million for the fiscal year 2010.

"I am very pleased to report that we have concluded fiscal 2010 with another quarter of solid results.  We look back at a year in which our business flourished due to significant organic business expansion in the financial IT industry, and the synergies of the Sysnet acquisition that further boost our presence in the insurance IT solution market.  This quarter's results once more indicate that Longtop's business is based on the indispensable and recurring nature of our software and solutions," commented Weizhou Lian, CEO of Longtop.  "Our outlook for 2011 is strong based on our sound business fundamentals and feedback from our customers.  With the acquisition of Giantstone, we feel we are better positioned to capitalize on the long-term growth opportunity in China's financial technology market."

*        *        *

Commenting on the results, Derek Palaschuk, CFO of Longtop, said: "In the fourth quarter revenue once more substantially exceeded our previous guidance, demonstrating the continuing strong demand for Longtop solutions.  Even with the inclusion of $1.1 million in operating losses from consolidating Giantstone, our operating and net income was still well above guidance.  Our continuous efforts to further improve overall business execution were underscored by a strong cash flow from

operations of $62.9 million for fiscal 2010. Looking ahead, our positive business momentum, stable margin structure and strong cash balance form a solid foundation to consolidate our leadership position in China's financial technology industry in fiscal 2011."

**BUSINESS OUTLOOK**

- Longtop anticipates for the quarter ending June 30, 2010:
- Total revenues of US$44.5 million, Adjusted Operating Income of US$18.0 million, Adjusted Net Income of US$16.1 million and Adjusted Diluted Earnings Per Share of US$0.28. Giantstone is expected to contribute $4.0 million of software development revenues, $1.4 million in Adjusted Operating Income, $1.1 million in Adjusted Net Income or $0.02 per diluted share.
- Longtop anticipates for its fiscal year ending March 31, 2011:
- Total revenues of US$225 million, Adjusted Operating Income of US$103.5 million, Adjusted Net Income of US$96.5 million and Adjusted Diluted Earnings Per Share of US$1.64. Giantstone is expected to contribute $15.0 million of software development revenues, $4.5 million in Adjusted Operating Income, $3.75 million in Adjusted Net Income or $0.06 per diluted share.

46.    Following issuance of the earnings release, on May 24, 2010, Longtop hosted a conference call to discuss the Company's financial results and operations. During the call, defendants made numerous positive statements about the Company's business and operations.

47.    On July 16, 2010, the Company filed with the SEC its annual report for the fiscal year ended March 31, 2010. The financial results reported in the Form 20-F were substantially similar to those reported in the Company's prior press releases. The Form 20-F was signed by defendants Lian and Palaschuk and contained

certifications signed by Lian and Palaschuk stating the Form 20-F did not include any material misrepresentations.

48.     On August 17, 2010, the Company issued a press release announcing its financial results for first quarter of 2011.  The press release discussed the Company's first quarter 2011 financial results and business outlook, and stated, in part:

**FINANCIAL HIGHLIGHTS**

- Total Revenues of US$48.9 million which Included US$2.4 million in Revenue From Zhongbo, a Business Acquired in Q1 2011, an Increase of 71.6% Year-on-Year (YOY), or 63.2% YoY Excluding the Impact of Zhongbo;
- Total Software Development Revenues of US$38.7 million, an Increase of 56.8% YoY;
- Adjusted Operating Income of US$19.1 million, an Increase of 65.4% YoY;
- Adjusted Net Income of US$17.9 million, an Increase of 67.3% YoY;
- Adjusted Diluted Earnings Per Share of US$0.31, an Increase of 55.0% YoY;
- Full Year Revenue Guidance Increased to US$233.0 million and Adjusted EPS Guidance Increased to US$1.70

"We have commenced our 2011 fiscal year with solid first quarter results.  I am pleased to see the continuing strong demand for Longtop's solutions due to long-term and structural technology growth trends in the financial services industry, which tend to be independent of the macroeconomic environment.  Once again, our company-wide effort to extend Longtop's market leadership was rewarded with strong independent endorsement by IDC, ranking us #1 for banking solutions and #2 in the insurance IT solution market in China during calendar year

- 23 -

2009," commented Weizhou Lian, CEO of Longtop. "In consideration of our growth momentum, we increase revenue and net income guidance for fiscal 2011."

\*       \*       \*

We have delivered sound top and bottom line financial results during the first fiscal quarter, which is traditionally our lowest revenue and net income quarter in the fiscal year. The strong outlook, evidenced by a healthy backlog and pipeline in our core software development business, has allowed us to increase guidance, and for the first time in our history we expect to achieve US$100 million in Adjusted Net Income," commented Derek Palaschuk, CFO of Longtop. "As in previous years, in Q2 and Q3 2011 we expect significant improvements from this quarter in our margins as well as from cash flow from operations."

\*       \*       \*

**BUSINESS OUTLOOK**

Longtop anticipates, for the quarter ending September 30, 2010:

- Total revenues, of US$57.0 million, Adjusted Operating Income of US$27.4 million, Adjusted Net Income of US$24.3 million and Adjusted Diluted Earnings Per Share of US$0.41. Giantstone is expected to contribute US$3.8 million in software development revenues.

- US GAAP Net Loss is expected to be approximately US$68.4, or US$1.17 Per Diluted Share, which is US$92.7 million less than Adjusted Net Income which includes the US$79.5 million share gift as well as the other Non GAAP adjustments normally made.

For the fiscal year ending March 31, 2011:

- Total revenues of US$233.0 million, Adjusted Operating Income of US$106.5 million, Adjusted Net Income of US$100.0 million

and Adjusted Diluted Earnings Per Share of US$1.70. Giantstone is expected to contribute US$16.0 million in software development revenues.

- US GAAP Net Loss is expected to be approximately US$11.2 million, or US$0.19 Per Diluted Share which is US$111.2 million less than Adjusted Net Income which includes the US$79.5 million share gift as well as the other Non GAAP adjustments normally made.

49.    Following issuance of the earnings release, on August 17, 2010, after the market closed, Longtop hosted a conference call to discuss the Company's financial results and operations.    During the call, defendants made numerous positive statements about the Company's business and operations.

50.    On November 15, 2010, the Company issued a press release announcing its financial results for the second quarter of 2011.  The press release discussed the Company's second quarter 2011 financial results and business outlook, and stated, in part:

**FINANCIAL HIGHLIGHTS**

- Total Software Development Revenues of US$55.5 million, an Increase of 50.0% Year-on-Year (YoY);
- Total Revenues of US$60.5 million, an Increase of 41.2% YoY;
- Adjusted Operating Income of US$28.7 million, an Increase of 38.4% YoY;
- Adjusted Net Income of US$25.7 million, an Increase of 19.8% YoY;
- Adjusted Diluted Earnings Per Share of US$0.44, Three Cents Ahead of Company Guidance;
- Operating Cash flow of US$31.6 million, an Increase of 67.6% YoY;

- Full Year Revenue Guidance Increased to US$242.5 million and Adjusted EPS Guidance Increased to US$ 1.76

"The financial results of the second fiscal quarter have exceeded our Company guidance. I am pleased to see the ongoing strength in demand from across the full spectrum of our customer base. The outstanding revenue contribution from Other Banks reaffirms the success over the past four years in diversifying and expanding our customer base as well as last year's acquisition of Giantstone and its core banking capabilities. We continue to be highly positive on our outlook for the second half of the 2011 fiscal year," commented Weizhou Lian, CEO of Longtop. "Longtop's growth momentum and expanding market leadership are based on customers' trust in our quality solutions and service, and we will work hard to continue to deserve their loyalty."

*       *       *

"Our Company performance has once more exceeded guidance for both top and bottom line results. Our order intake, margins and cash flow from operations which was US$31.6 million significantly improved in the second quarter as we had anticipated. On the back of strong demand and execution, we are now raising our fiscal 2011 revenue guidance to US$242.5 million up from 225.0 million at the beginning of our fiscal year and Adjusted Earnings Per Share of US$1.76 up from US$1.64," commented Derek Palaschuk, CFO of Longtop.

**BUSINESS OUTLOOK**

Longtop anticipates, for the quarter ending December 31, 2010:

- Total revenues, of US$73.5 million, Adjusted Operating Income of US$38.0 million, Adjusted Net Income of US$33.1 million and Adjusted Diluted Earnings Per Share of US$0.56. Giantstone is

expected to contribute US$3.5 million of software development revenues.

- Excluding the impact of new acquisitions, US GAAP net income is expected to be approximately US$26.8 million or US$0.46 per diluted share, which is US$6.3 million less than Adjusted Net Income due to Non GAAP adjustments normally made.

For its fiscal year ending March 31, 2011:

- Total revenues of US$242.5 million, Adjusted Operating Income of US$110.0 million, Adjusted Net Income of US$103,5 million and Adjusted Diluted Earnings Per Share of US$1.76. Giantstone is expected to contribute US$16 million of software development revenues.

- Excluding the impact of new acquisitions, US GAAP net loss is expected to be approximately US$8.3 million, or US$0.18 per diluted share which is US$111.8 million less than Adjusted Net Income which includes the US$79.5 million share gift as well as the other Non GAAP adjustments normally made.

51.    Following issuance of the earnings release, on November 15, 2010, Longtop hosted a conference call to discuss the Company's financial results and operations.  During the call, defendants made numerous positive statements about the Company's business and operations.

52.    On January 31, 2011, the Company issued a press release announcing its financial results for the third quarter of 2011.  The press release discussed the Company's third quarter 2011 financial results and business outlook, and stated, in part:

**FINANCIAL HIGHLIGHTS**

- Third quarter software development revenues of US$72.5 million, an increase of 56.3% Year-on-Year (YoY);

- Third quarter total revenues of US$76.9 million, an increase of 40.7% YoY;
- Third quarter Adjusted Operating Income of US$40.2 million, an increase of 37.1% YoY;
- Third quarter Adjusted Net Income of US$35.6 million, an increase of 21.5% YoY. Included in Q3 2010 Adjusted Net Income was an income tax benefit of US$4.0 million (Q3 2011: nil). Excluding the income tax benefit, Adjusted Net Income would have increased by 40.7%;
- Third quarter Adjusted Diluted Earnings Per Share of US$0.61, five cents ahead of Company guidance;
- Cash Flow From Operations in Q3 2011 was a record US$43.9 million and US$75.0 million for the first nine months of fiscal 2011, an increase of 49.8% YoY;
- Full Year Revenue Guidance increased from US$242.5 million to US$249.0 million and Adjusted Operating Income Guidance Increased from US$110.0 million to US$113.0 million

"I am very pleased to report that we have delivered the strongest cash flow from operations to date since our IPO in 2007 on the back of outstanding execution from our management and employees. The momentum has accelerated during fiscal 2011 with our organic growth rate for software development revenue of approximately 40% in the first nine months significantly higher than the 30% guidance we gave at the outset of the year while maintaining a relatively stable organic operating margin. With this momentum, we are once again raising guidance for the fiscal fourth quarter of 2011," commented Weizhou Lian, CEO of Longtop. "For fiscal 2012 we continue to see strong demand from our customers that execute on their long-term IT development plans

irrespective of short-term changes in macroeconomic factors. Based on our sales pipeline and ongoing discussions with customers about their IT spending plans, Longtop's growth prospects remain bright for fiscal 2012. I believe Longtop's competitive position is stronger than ever and we continue to take market share from our competitors."

\* \* \*

"Improving our accounts receivable management was an important objective for us this year. I am particularly pleased to see record high operating cash flow of US$43.9 million in the third quarter and US$75.0 million for the first nine months which further underscores the solidity of business demand and overall management execution at Longtop. During the fiscal third quarter order intake continued to be very strong, the Company was once again able to report higher-than-guided top and bottom line results and our industry leading margins give us significant room for additional investments in our business," commented Derek Palaschuk, CFO of Longtop.

**BUSINESS OUTLOOK**

Longtop anticipates, for the quarter ending March 31, 2011:

- Total revenues of US$62.7 million and Adjusted Operating Income of US$25.0 million. Giantstone is expected to contribute US$3.5 million of software development revenues.
- Excluding the impact of new acquisitions, US GAAP operating income is expected to be approximately US$18.5 million which is US$6.5 million less than Adjusted Operating Income due to Non GAAP adjustments normally made.

For its fiscal year ending March 31, 2011:

- Total revenues of US$249.0 million and Adjusted Operating Income of US$113.0 million. Giantstone is expected to contribute US$18.0 million of software development revenues.

- Excluding the impact of new acquisitions, US GAAP operating income is expected to be approximately US$2.0 million, or US$111.0 million less than Adjusted Operating Income which includes the US$79.5 million share gift as well as the other Non GAAP adjustments normally made.

53.     Following issuance of the earnings release, on January 31, 2011, after the market closed, Longtop hosted a conference call to discuss the Company's financial results and operations.     During the call, defendants made numerous positive statements about the Company's business and operations.

54.     On April 26, 2011, Citron issued a report on Longtop stating that "every financial statement from [Longtop's] IPO to this date is fraudulent." The report raised serious issues with the quality of the Company's earnings reports and operations, and detailed Longtop's outrageous profit margins and suspicious off-balance-sheet relationships with XLHR, as well as several facts undermining the credibility of Longtop's key management.

55.     In response to the report, the price of Longtop shares declined substantially, falling 12.9%, or $3.30 per share on April 26, 2011, and then plummeted another 20%, or $4.51 per share, to close at $17.73 per share on April 27, 2011, on heavy trading volume.

56.     On April 27, 2011, *The Street* published an article entitled "Longtop Financial: Fund Managers' Dilemma," which discussed Citron's report and stated in relevant part:

At a minimum, LFT is not disclosing the nature of related parties (i.e. the employment agency used to staff the company) and this will be an issue

- 30 -

for the 10K.  This is simply a disclosure issue and should not have a significant impact on the share price, as long as the underlying numbers between the parties matches.  However, the existence of this undisclosed related party arrangement is a black eye for Deloitte because it should be easily observable during the audit process and should obviously be disclosed. It raises the risk that Deloitte has not fully audited all of the necessary components of the company's revenue and income stream.

Citron also discusses past criminal behavior by the chairman and CEO which resulted in a court ruling against them.  The company they had previously worked for (and which took them to court) was omitted from their biographies in the IPO and I expect it will also be a disclosure issue going forward.  To the extent that this does not affect Deloitte's sign off on the 10K, it should not be an issue for the share price.  However it should certainly be viewed as a red flag and obviously raises the likelihood of accounting irregularities.

The key red flag is that LFT has reported margins that are more than double that of competitors.  From an auditing standpoint, deconstructing the numbers is made more difficult due to the unusual employment arrangement by which LFT offloads employment to a different entity. Since the entity appears to be a related party, this arrangement makes very little sense from a business standpoint. If there are any issues with revenue and expense recognition, it will at a minimum result in a restatement of earnings which will, as always, cause a mass exodus from the stock.

Citron touches on one issue with LFT that I believe may have much wider ranging implications for U.S.- listed China stocks, namely the transfer of shares by major insiders using unusual transactions. According to Citron, the founder and chairman has "gifted" 70% of his

1   stock to employees and friends over the past four years.  This is certainly
2   unusual and unexpected.  However, if it turns out that there is more to
3   the transactions than simple gifting, then the consequences for the
4   company and the share price will be significant.

5   57.   On April 28, 2011, Longtop hosted a conference call specifically to
6   discuss the Citron report.  During the call, the Company repeatedly and emphatically
7   denied any wrongdoing, stating in part:

8   Although it is Longtop's practice not to respond to market rumors,
9   especially when the Company is in a quiet period ahead of earnings,
10   management believes that in this case it is appropriate to have this call to
11   rebut the absolutely false allegations of fraud and other alleged
12   wrongdoings in an April 26 report hosted and Citron report.

13   These reports seem to have caused unwarranted and disturbing
14   turbulence in the trading markets for our shares.  We want to take this
15   opportunity to rebut all opinions expressed and rumors repeated in the
16   report.  A number of investors have even said to us there was nothing
17   new in this report.

18   The report starts with the allegation that every financial statement from
19   IPO to date is fraudulent.  There is absolutely no basis to support this
20   allegation, and we are deeply outraged that anyone purporting to conduct
21   reputable market research would make such a statement without basis.

22   Longtop is a well-managed company that has completed Sarbanes-Oxley
23   404 with no material weaknesses every year after becoming a public
24   company, never has had a financial restatement and has consistently had
25   normal earnings reporting and 20-F filing schedules.  These earnings are
26   supported by the strongest cash flows in the industry.

27   We are on schedule to report our Q4 2011 financial results on May 23,
28   2011, and plan to file our 20-F in July 2011 as normal.  You can see

1    from this report it also attacks Deloitte, our auditors, who audit a number

2    of public companies around the world.

3    We have a very close dialogue with our auditors.   We have been

4    communicating with them regularly on market rumors of fraud since

5    these attacks on Longtop first surfaced well over a year ago.

6    These rumors and allegations, which are repeated almost verbatim in the

7    Citron reports, have become predictable in their timing.   They always

8    fall in our quiet periods leading up to our earnings announcements.

9    People have asked whether our auditors can attend a public conference

10   call with yourself.   However, that is not a practice for any public

11   company.

12   The best evidence of our auditor's support is when they signed a 20-F,

13   which will be filed in July 2011.  Also, before we announce our May 23

14   results, we will have had our audit committee's clearance as well as

15   verbal clearance from the auditors.  We want to emphasize that we will

16   not have to restate our financial results.

17       58.    In response to the false and misleading statements made by defendants

18   during the conference call, the price of Longtop stock rose 10.9%, or $1.93 per share,

19   to close at $19.66 on April 28, 2011, on heavy trading volume.

20       59.    On May 3, 2011, *The Wall Street Journal* published an article entitled

21   "Renren Audit Committee Head Resigns As IPO Approaches," revealing that

22   Palaschuk abruptly resigned his position as member of the board of directors of

23   Renren Inc. ("Renren"), where he was chairman of the audit committee, prior to

24   Renren's upcoming IPO, because of the many looming questions concerning

25   fraudulent accounting at Longtop.

26       60.    Then on May 9, 2011, Citron published a follow-up report entitled

27   "Longtop Financial (NYSE: LFT) Final Proof of Undisclosed Related Party

28

- 33 -

1  Transactions."  Among other things, the report further discussed the Company's
2  connection to XLHR.

3      61.    In response to the release of the second Citron report, the price of
4  Longtop stock fell 8.2%, or $1.67 per share, to close at $18.54 per share on May 9,
5  2011.

6      62.    On May 10, 2011, Longtop issued a press release further denying the
7  claims of both Citron reports, as well as a similar report issued by OLP Global.

8      63.    On May 17, 2011, all NYSE trading of Longtop stock was halted pending
9  an announcement by the Company.  At the time of the suspension, Longtop shares
10  were trading at $18.93 per share.

11     64.    Following the close of the Class Period, negative news continued to enter
12  the market.  First, on May 19, 2011, Longtop issued a press release announcing that
13  the Company would not announce its fourth quarter and fiscal year 2011 financial
14  results on May 23, 2011, as previously scheduled.  The Company stated that it "plans
15  to publish an announcement on the new date of fourth quarter and fiscal year 2011
16  earnings reporting once the date has been determined."

17     65.    Then, on May 23, 2011, Longtop issued a press release announcing that
18  its independent auditor, Deloitte Touche Tohmatsu CPA Limited, had resigned and
19  that the SEC was conducting an investigation into related matters.  The Company also
20  announced that Palaschuk tendered his resignation dated May 19, 2011.  The press
21  release further stated:

22         Longtop Financial Technologies Limited ("Longtop" or the "Company")
23         (NYSE: LFT) announced today that the Company's registered
24         independent accounting firm, Deloitte Touche Tohmatsu CPA Ltd.
25         ("DTT"), has resigned as auditor of the Company by letter dated May 22,
26         2011.  The Company also announced that Derek Palaschuk, the
27         Company's Chief Financial Officer, tendered his resignation by letter,

28

1    dated May 19, 2011, and the Board has taken his resignation under
2    advisement.
3       In its letter, DTT stated that it was resigning as the result of, among other
4    things (1) the recently identified falsity of the Company's financial
5    records in relation to cash at bank and loan balances (and possibly in
6    sales revenue); (2) the deliberate interference by certain members of
7    Longtop management in DTT's audit process; and (3) the unlawful
8    detention of DTT's audit files.  DTT further stated that DTT was no
9    longer able to rely on management's representations in relation to prior
10   period financial reports, that continued reliance should no longer be
11   placed on DTT's audit reports on the previous financial statements, and
12   DTT declined to be associated with any of the Company's financial
13   communications in 2010 and 2011.
14      Longtop's Audit Committee has retained US legal counsel and
15   authorized the retention of forensic accountants to conduct an
16   independent investigation into the matters raised by DTT's resignation
17   letter.  The Audit Committee has also initiated a search for a new
18   auditor.  Further, Longtop was advised by the United States Securities
19   and Exchange Commission ("SEC") that the SEC was conducting an
20   inquiry regarding related matters.  Longtop intends to cooperate fully
21   with the SEC's inquiry.
22      Longtop is unable to determine the full effect of these matters, including
23   whether any restatement of its historical financial statements will be
24   required, until the Audit Committee completes its review.  Longtop
25   cannot predict when it will announce its financial results for Q4 2011, or
26   when it will file its Form 20F for the fiscal year ended March 31, 2011.
27
28

Further, the Company announced that Wei Dong, Senior Vice President since April 1, 2009, assumed the responsibility of Chief Operating Officer of the Company.

66. The true facts, which were known by defendants but concealed from the investing public during the Class Period, were as follows:

(a) the Company misrepresented and overstated its financial condition and future business prospects; and

(b) as a result of the foregoing, defendants' statements regarding the Company's financial performance and expected earnings were false and misleading and lacked a reasonable basis when made.

67. As a result of defendants' false statements and omissions, Longtop securities traded at artificially inflated prices during the Class Period. After the above revelations were revealed to the market, however, the Company's shares were hammered by massive sales, sending them down approximately *55.7%* from their Class Period high. Further, but for the suspension in trading, Longtop's shares would have suffered additional, substantial drops in response to the disclosures on May 19 and 23, 2011.

**LOSS CAUSATION/ECONOMIC LOSS**

68. During the Class Period, as detailed herein, defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the prices of Longtop publicly traded securities and operated as a fraud or deceit on Class Period purchasers of Longtop securities by failing to disclose and misrepresenting the adverse facts detailed herein. When defendants' prior misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the prices of Longtop securities fell precipitously as the prior artificial inflation came out. As a result of their purchases of Longtop securities during the Class Period, Plaintiff and the other Class members suffered economic loss, *i.e.*, damages, under the federal

1 securities laws when the truth about Longtop was revealed, which removed the

2 artificial inflation from the price of Longtop securities.

3       69.   By failing to disclose to investors the adverse facts detailed herein,

4 defendants presented a misleading picture of Longtop's business and prospects.

5 Defendants' false and misleading statements had the intended effect and caused

6 Longtop securities to trade at artificially inflated prices throughout the Class Period,

7 reaching as high as $42.73 per share on November 10, 2010.

8       70.   As a direct result of the disclosures on April 26, 2011 and May 9, 2011,

9 Longtop securities fell precipitously. These drops removed artificial inflation from

10 the prices of Longtop securities, causing real economic loss to investors who had

11 purchased Longtop securities at artificially inflated prices during the Class Period.

12       71.   The declines were a direct result of the nature and extent of defendants'

13 fraud finally being revealed to investors and the market. The timing and magnitude of

14 the price declines in Longtop securities negates any inference that the loss suffered by

15 Plaintiff and the other Class members was caused by changed market conditions,

16 macroeconomic or industry factors or Company-specific facts unrelated to defendants'

17 fraudulent conduct. The economic loss, *i.e.*, damages, suffered by Plaintiff and the

18 other Class members was a direct result of defendants' fraudulent scheme to

19 artificially inflate the prices of Longtop securities and the subsequent significant

20 decline in the value of Longtop securities when defendants' prior misrepresentations

21 and other fraudulent conduct were revealed.

22                 **APPLICABILITY OF PRESUMPTION OF RELIANCE:**
**FRAUD ON THE MARKET DOCTRINE**

23

24       72.   At all relevant times, the market for Longtop securities was an efficient

market for the following reasons, among others:

25

26         (a)    Longtop securities met the requirements for listing, and were listed

and actively traded on the NYSE, a highly efficient and automated market;

27

28

1        (b)    As a regulated issuer, Longtop filed periodic public reports with

2  the SEC and the NYSE;

3        (c)    Longtop regularly communicated with public investors via

4  established market communication mechanisms, including regular dissemination of

5  press releases on the national circuits of major newswire services and other wide-

6  ranging public disclosures, such as communications with the financial press and other

7  similar reporting services; and

8        (d)    Longtop was followed by several securities analysts employed by

9  major brokerage firms who wrote reports which were distributed to the sales force and

10  certain customers of their respective brokerage firms.  Each of these reports was

11  publicly available and entered the public marketplace.

12       73.    As a result of the foregoing, the market for Longtop securities promptly

13  digested current information regarding Longtop from all publicly available sources

14  and reflected such information in the prices of the stock.  Under these circumstances,

15  all purchasers of Longtop securities during the Class Period suffered similar injury

16  through their purchase of Longtop securities at artificially inflated prices and a

17  presumption of reliance applies.

18                  **NO SAFE HARBOR**

19       74.    The statutory safe harbor provided for forward-looking statements under

20  certain circumstances does not apply to any of the allegedly false statements pleaded

21  in this Complaint. Many of the specific statements pleaded herein were not identified

22  as "forward-looking statements" when made.  To the extent there were any forward-

23  looking statements, there were no meaningful cautionary statements identifying

24  important factors that could cause actual results to differ materially from those in the

25  purportedly forward-looking statements.  Alternatively, to the extent that the statutory

26  safe harbor does apply to any forward-looking statements pleaded herein, defendants

27  are liable for those false forward-looking statements because at the time each of those

28  forward-looking statements was made, the particular speaker knew that the particular

forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Longtop who knew that those statements were false when made.

## COUNT I

### For Violation of §10(b) of the 1934 Act and Rule 10b-5
### Against All Defendants

75.   Plaintiff incorporates ¶¶1-74 by reference.

76.   During the Class Period, defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

77.   Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

(a)   employed devices, schemes, and artifices to defraud;

(b)   made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)   engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with their purchases of Longtop securities during the Class Period.

78.   By virtue of the foregoing, Longtop and the Individual Defendants have each violated §10(b) of the 1934 Act, and Rule 10b-5 promulgated thereunder.

79.   As a direct result and proximate result of defendants' wrongful conduct, Plaintiff and the Class suffered damages in connection with their respective purchases and sales of Longtop securities during the Class Period, because, in reliance on the integrity of the market, they paid artificially inflated prices for Longtop securities and experienced loses when the artificial inflation was released from Longtop securities as a result of the revelations and price declines detailed herein.  Plaintiff and the Class

- 39 -

1  would not have purchased Longtop securities at the prices they paid, or at all, if they

2  had been aware that the market prices had been artificially and falsely inflated by

3  defendants' misleading statements.

**COUNT II**

**For Violation of §20(a) of the 1934 Act**
**Against All Defendants**

7      80.   Plaintiff incorporates ¶¶1-79 by reference.

8      81.   The Individual Defendants acted as controlling persons of Longtop

9  within the meaning of §20(a) of the 1934 Act. By reason of their controlling positions

10  with the Company, the Individual Defendants had the power and authority to cause

11  Longtop to engage in the wrongful conduct complained of herein. Longtop controlled

12  the Individual Defendants and all of its other employees. By reason of such conduct,

13  defendants are liable pursuant to §20(a) of the 1934 Act.

**PRAYER FOR RELIEF**

15     WHEREFORE, Plaintiff prays for judgment as follows:

16     A.   Declaring this action to be a proper class action pursuant to Fed. R. Civ.

17  P. 23;

18     B.   Awarding Plaintiff and the members of the Class damages, including

19  interest;

20     C.   Awarding Plaintiff reasonable costs and attorneys' fees; and

1       D.     Awarding such equitable/injunctive or other relief as the Court may deem

2   just and proper.

3                                    **JURY DEMAND**

4       Plaintiff demands a trial by jury.

5   DATED:  June 2, 2011                  ROBBINS GELLER RUDMAN
6                                           & DOWD LLP
                                          DARREN J. ROBBINS
7                                         DAVID C. WALTON

8                                         [signature]
9                                         _____
                                          DAVID C. WALTON

10                                        655 West Broadway, Suite 1900
11                                        San Diego, CA 92101
                                          Telephone: 619/231-1058
                                          619/231-7423 (fax)

12                                        ROBBINS GELLER RUDMAN
13                                          & DOWD LLP
                                          DAVID J. GEORGE
14                                        ROBERT J. ROBBINS
                                          120 E. Palmetto Park Road, Suite 500
15                                        Boca Raton, FL  33432
                                          Telephone:  561/750-3000
16                                        561/750-3364 (fax)

17                                        VANOVERBEKE MICHAUD &
                                            TIMMONY, P.C.
18                                        MICHAEL J. VANOVERBEKE
                                          THOMAS C. MICHAUD
19                                        79 Alfred Street
                                          Detroit, MI  48201
20                                        Telephone: 313/578-1200
                                          313/578-1201 (fax)

21                                        Attorneys for Plaintiff

22

23

24

25

26

27  S:\CptDraft\Securities\Cpt Longtop Financial Technologies.doc

28

                                    - 41 -

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

WASHTENAW COUNTY EMPLOYEES' RETIREMENT SYSTEM ("Plaintiff") declares:

1.      Plaintiff has reviewed a complaint and authorized its filing.

2.      Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.      Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.      Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

| Security | Transaction | Date | Price Per Share |
|----------|-------------|------|-----------------|

See attached Schedule A.

5.      Plaintiff has not sought to serve or served as a representative party in a class action that was filed under the federal securities laws within the three-year period prior to the date of this Certification except as detailed below:

*In re Celera Corp. Sec. Litig.*, No. 10-cv-02604-JW(HRL) (N.D. Cal.)
*Washtenaw County Employees' Retirement System v. The Talbots, Inc., et al.*, Case No. No. 1:11-cv-10186-NMG (D. Mass.)

LONGTOP FINANCIAL

6.     The Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this ⎯2⎯ day of ⎯⎯JUNE⎯⎯, 2011.

**WASHTENAW COUNTY EMPLOYEES'
RETIREMENT SYSTEM**

By: ⎯*Roberta Allen*⎯⎯⎯

Its: ⎯*Chair*⎯⎯⎯⎯⎯

LONGTOP FINANCIAL

### SCHEDULE A

### SECURITIES TRANSACTIONS

**Acquisitions**

| Date Acquired | Type/Amount of Securities Acquired | Price |
|---|---|---|
| 03/07/2011 - SD | 200 | $28.05 |
| 03/07/2011 - SD | 200 | $28.15 |
| 03/08/2011 - SD | 200 | $29.25 |
| 03/09/2011 - SD | 100 | $29.54 |
| 03/09/2011 - SD | 100 | $29.42 |
| 03/10/2011 - SD | 100 | $29.45 |
| 03/14/2011 - SD | 200 | $30.46 |
| 03/15/2011 - SD | 100 | $30.09 |
| 03/16/2011 - SD | 100 | $30.33 |
| 03/17/2011 - SD | 200 | $29.60 |
| 03/18/2011 - SD | 100 | $28.93 |
| 03/18/2011 - SD | 100 | $28.83 |
| 04/15/2011 - SD | 100 | $27.49 |
| 04/15/2011 - SD | 100 | $27.71 |
| 04/15/2011 - SD | 200 | $27.81 |

**Sales**

| Date Sold | Type/Amount of Securities Sold | Price |
|---|---|---|
| 04/29/2011 - SD | 100 | $22.21 |
| 04/29/2011 - SD | 300 | $22.19 |
| 04/29/2011 - SD | 300 | $22.26 |
| 05/2/2011 - SD | 61 | $18.65 |
| 05/2/2011 - SD | 100 | $17.77 |
| 05/2/2011 - SD | 400 | $18.90 |
| 05/2/2011 - SD | 839 | $18.65 |

*Settlement dates are indicated with "SD" attached to the date.

COPY

Name & Address:

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

WASHTENAW COUNTY EMPLOYEES'
RETIREMENT SYSTEM, Individually and on Behalf
of All Others Similarly Situated,

PLAINTIFF(S)

v.

LONGTOP FINANCIAL TECHNOLOGIES
LIMITED, WAI CHAU LIN and DEREK
PALASCHUK,

DEFENDANT(S).

CASE NUMBER

**CV11  04714 PA (MANx)**

**SUMMONS**

TO:    DEFENDANT(S): _____

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you
must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint
☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer
or motion must be served on the plaintiff's attorney, David C. Walton _____, whose address is
Robbins Geller, et al., 655 West Broadway, Suite 1900, San Diego, CA 92101 _____. If you fail to do so,
judgment by default will be entered against you for the relief demanded in the complaint.  You also must file
your answer or motion with the court.

Clerk, U.S. District Court

Dated:    JUN – 2 2011

By: _____

CHRISTOPHER POWERS

Deputy Clerk

(Seal of the Court)

4181

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed
60 days by Rule 12(a)(3)].*

CV-01A (12/07)                                    SUMMONS

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| WASHTENAW COUNTY EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated | LONGTOP FINANCIAL TECHNOLOGIES LIMITED, WAI CHAU LIN and DEREK PALASCHUK |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| David C. Walton<br>Robbins Geller Rudman & Dowd LLP<br>655 West Broadway, Suite 1800, San Diego, CA 92101   619/231-1058 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff

☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☑ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes   ☐ No   ☐ MONEY DEMANDED IN COMPLAINT: $ _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

15 U.S.C. §§78j(b) and 78t(a)   Complaint for Violation of the Federal Securities Laws

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 830 Patent |
| ☑ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | IMMIGRATION | ☐ 446 American with Disabilities - Other | ☐ 640 R.R. & Truck | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 650 Airline Regs | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 660 Occupational Safety /Health | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | ☐ 690 Other | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 245 Tort Product Liability | | | | |
| | ☐ 290 All Other Real Property | | | | |

**CV11 04714**

FOR OFFICE USE ONLY:   Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

| CV-71 (05/08) | CIVIL COVER SHEET | Page 1 of 2 |
|---|---|---|

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s):

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No ☑ Yes
If yes, list case number(s): 2:11-cv-04402-MMM-FFM

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply) ☑ A. Arise from the same or closely related transactions, happenings, or events; or
☑ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☑ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Michigan |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | People's Republic of China |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____ Date June 2, 2011

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Percy Anderson and the assigned discovery Magistrate Judge is Margaret A. Nagle.

The case number on all documents filed with the Court should read as follows:

### CV11- 4714 PA (MANx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=====================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[X] **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[ ] **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[ ] **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.